**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**DONNELL HART,**
                    **Petitioner,**


**v.**                                          **Civil Action No.: 3:18-CV-41**


**JOE COAKLEY, WARDEN,**
                    **Respondent.**


## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On March 26, 2018, Petitioner, an inmate at FCI Hazelton, acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition") challenging the calculation of his parole date by the United States Parole Commission ("USPC" or "Parole Commission"). ECF No. 1.[1]

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied and dismissed with prejudice.

---

[1] ECF Numbers cited herein refer to case number 3:18-CV-41 unless otherwise noted.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.  Petitioner's Convictions and Sentences from the District of Columbia[2]

On two separate dates in 1992, Petitioner committed felony offenses in the District of Columbia.  This led to charges being filed against him in District of Columbia Superior Court in case numbers 1992 FEL 000481[3] and 1992 FEL 006668.  ECF No. 16-2.

Specifically, on January 13, 1992, Petitioner was charged in 1992 FEL 000481 with distribution of cocaine.  On January 11, 1993, Petitioner entered a guilty plea to the charge.  Thereafter, Petitioner was charged in District of Columbia Superior Court case number 1992 FEL 006668 with robbery on June 25, 1992.  Petitioner entered his guilty plea to the robbery charge on September 28, 1992.  On February 11, 1993, Petitioner was sentenced to not less than five nor more than fifteen years of imprisonment for robbery and an aggregate term of fifteen years and thirty days for the two offenses.  See also ECF Nos. 16-1, 16-2, 16-7, 16-17.

### B.   Petitioner's Parole Hearings

On March 1, 1996, and then again on April 14, 1997, Petitioner was denied parole by the District of Columbia Board of Parole.  ECF Nos. 16-3 and 16-4.  The United States Parole Commission[4] held a parole hearing for Petitioner on December 29, 2001, at which

---

[2]  The facts in section II.A. are taken from the District of Columbia Superior Court case search: https://eaccess.dccourts.gov/eaccess/home.page.2  Additional citations are included where available.

[3]  Pursuant to the District of Columbia Superior Court case search page, an abbreviated case number such as 17ADM1 is more properly written 2017 ADM 000001.  Accordingly, where Petitioner's case number may appear in the abbreviated format as "F6668-92D", the correct citation number is "1992 FEL 006668".  https://eaccess.dccourts.gov/eaccess/home.page.15

[4]  Pursuant to D.C. Code Ann. § 24-131, "Not later than one year after August 5, 1997, the United States Parole Commission shall assume the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole, and to impose conditions upon an order of parole, in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code."

time the Parole Commission denied Petitioner parole.  ECF No. 16-5.  The notice of denial

listed the reasons for Petitioner's parole denial:

> Your Grid Score at your last hearing was 4 point(s).  You continue to be scored under the 1987 guidelines[5] of the D.C. Board of Parole.
>
> Under the guidelines for D.C. Code offenders, your current Total Point Score includes 1 point for negative institutional behavior and include -1 point for ordinary program achievement since your last hearing.
>
> With adjustments reflecting your institutional record since your last hearing, your current Grid Score is 4.  You continue to be scored under the 1987 guidelines of the D.C. Board of Parole. Those guidelines indicate that parole should not be granted at this time.  After consideration of all factors and information presented, a departure from the guidelines at this consideration is not warranted.
>
> THE ABOVE DECISION IS NOT APPEALABLE.

Id.

At the time of his release upon parole on August 9, 2002, Petitioner had 1,810

days of his sentence remaining to be served.  ECF Nos. 16-6 at 1, 16-7.  Although

Petitioner was released upon parole from his District of Columbia sentences, he was not

released from custody and instead, he began directly serving another sentence previously

---

[5] In 1985, parole guidelines were promulgated for District of Columbia prisoners.  Pursuant to 28 C.F.R. § 2.80(a)(4), "[f]or a prisoner whose initial hearing was held before August 5, 1998, the Commission shall render its decision by reference to the guidelines of the former D.C. Board of Parole in effect on August 4, 1998."  Those guidelines are based on a point system, called the "Salient Factor Score" or "SFS".

"To calculate an inmate's SFS, the D.C. Board assigned 'a numerical value' to each of six factors: (1) '[p]rior convictions and adjudications,' *[D.C. Mun. Regs. Tit. 28]* § 204.4(a); (2) '[p]rior commitments of more than thirty (30) days,' *id.* § 204.4(b); (3) '[a]ge at commission of current offense,' *id.* § 204.4(c); (4) '[r]ecent commitment-free period,' *i* § 204.4(d); (5) '[s]tatus of prisoner at time [of the] current offense,' *id.* § 204.4(e); and (6) '[h]istory of heroin or opiate dependence.'  Moorer v. Fulwood, 679 F. App'x 688, 691–92 (10th Cir. 2017).

imposed in the Eastern District of Virginia.  There he was convicted by a jury on May 11, 1995, of assault on a correctional officer and possession of a shank, and was sentenced on July 28, 1995, to 30 months of incarceration, followed by 3 years of supervised release on each count, with those sentences to be served concurrently with one another, but consecutively to any other sentence then being served or previously imposed.  E.D.Va. 1:95-CR-87, ECF Nos. 1, 29, 49.  Petitioner was released from that sentence in the Eastern District of Virginia on October 18, 2004.  ECF No. 16-2 at 8, 11.

### C.    Criminal Charges and Convictions While Petitioner was on Parole

While Petitioner was released upon parole, he was charged with three violations of parole, two of which were for new criminal violations.  ECF No. 16-6.  The three violations served as the basis for the March 21, 2007, issuance of a warrant by the Parole Commission for Petitioner's arrest.  Id.  The warrant listed the charges as follows: (1) urine drug screens which tested positive for marijuana on November 9, 2004, November 16, 2004, November 18, 2004, November 23, 2004, November 30, 2004, December 2, 2004, December 7, 2004, December 9, 2004 and December 14, 2004; (2) new criminal charges for (a) possession with intent to distribute heroin, (b) possession with intent to distribute crack cocaine, and (c) possession of marijuana; and (3) new criminal charges for (a) robbery, and (b) felon in possession of a firearm.  Id.  Although the warrant was both issued and served, it was later determined that the warrant should not have been executed because Petitioner was being held without bond on his new robbery charge, and that the warrant should have remained as a detainer.  ECF No. 16-9.  By order of the Parole Commission on May 6, 2007, Petitioner was released from the March 21, 2007, warrant, conditionally reinstated to supervision, and the March 21, 2007, warrant was

ordered to be lodged as a detainer.  ECF No. 16-10.

On June 28, 2007, Petitioner was sentenced by the Superior Court of the District of Columbia to 128 months of incarceration upon his convictions for armed robbery and assault with a dangerous weapon in case number 2007 CF3 004891.  ECF No. 16-11.

By supplement issued June 24, 2016, the Parole Commission noted that Petitioner completed his 128-month sentence on June 14, 2016, and commenced revocation proceedings on his 2007 parole violations.  ECF No. 16-12.  The hearing examiner prepared a hearing summary on July 21, 2016, which recommended that: Petitioner's parole should be revoked; an additional eight month sentence should be imposed; none of the time spent on parole should be credited toward Petitioner's sentence; and that parole should be effective on March 26, 2017, after the service of 121 months.[6]  The hearing examiner further stated that the "additional 8 months is needed to secure pre-release residential reentry center housing."  Id. at 3.

The Parole Commission considered and adopted all of the hearing examiner's recommendations by Notice of Action dated August 9, 2016.  ECF No. 16-14.  The Notice ordered that parole be revoked, that "[n]one of the time spent on parole shall be credited" toward Petitioner's sentence, and re-parole was to be effective on March 26, 2017.  Id. at 1.  The Notice stated that, "[gu]idelines established by the Commission indicate a customary range of 60-72 months to be served before release.  After review of all relevant factors and information, a decision above the guidelines is mandated in that you have a minimum sentence which exceeds the guideline range."  Id.

Although Petitioner was eligible for release on March 26, 2017, because of

---

[6]  The 121-month sentence was comprised of 113 months of custody through July 26, 2016, and the additional recommended 8 months of incarceration.  ECF No. 16-13 at 2.

continued prohibited activity while on supervision, Petitioner's release was delayed by memorandum dated March 28, 2017, because he: (1) submitted urine screens which tested positive for narcotics on January 31, 2017, and February 2, 2017, in violation of Code 112; (2) committed the offense of escape from a non-secure facility, a hospital, on December 21, 2016, in violation of Code 200; and (3) used alcohol, on December 28, 2016, in violation of Code 112.  ECF No. 16-15.  Petitioner's presumptive parole date was modified to May 25, 2017.  Id. at 2.

Denial of release upon parole and a rescission of parole hearing were ordered by the Parole Commission by Notice of Action dated March 29, 2017.  This decision was based on a Disciplinary Hearing Officer's December 30, 2016, which found Petitioner guilty as to the charges of use of any drugs or alcohol, and escape from unescorted community program.  ECF No. 16-16.  On June 19, 2017, a Post Hearing Assessment was conducted by a hearing examiner, who recommended that the March 26, 2017, parole effective date should be rescinded.   The hearing examiner concluded that Petitioner had violated the rules of the institution and parole, and that Petitioner should be required to serve an additional eight months of incarceration until November 26, 2017, at which time Petitioner should have special conditions requiring residential re-entry placement with mental health and drug aftercare.  ECF No. 16-17.

By Notice of Action dated July 17, 2017, the Parole Commission, acting upon the findings of the hearing examiner who conducted the June 19, 2017 hearing, ordered that Petitioner's parole granted March 26, 2017, be rescinded, and that Petitioner was to "[c]ontinue to a presumptive parole on July 25, 2018 [which] requires the additional service of 16 months."  ECF No. 16-18.

Petitioner's July 25, 2018, presumptive parole date was again delayed by a second rescission hearing, pursuant to a Notice of Action issued May 10, 2018.  ECF No. 16-19. This was based on two incident reports where Petitioner was found guilty by a Disciplinary Hearing Officer on September 18, 2017, of Assaulting any Person (minor), and on March 16, 2018, of refusing drug testing.  Id.

On June 14, 2018, a Post Hearing Assessment was conducted by a hearing examiner, who found that Petitioner committed the infractions of: (1) assault without serious injury, in violation of code 224; and (2) refusing drug testing, in violation of Code 110.  ECF No 16-20.  The hearing examiner recommended a decision below the guidelines because Petitioner's "maximum remaining term of imprisonment limit[ed] the amount of additional time [Petitioner could] serve to a period of time that is below the applicable rescission guideline range."  Id. at 2.

By Notice of Action dated July 6, 2018, the Parole Commission ordered that Petitioner's presumptive parole date of July 25, 2018, be rescinded and continued to expiration, which would require the additional service of 20 months.  ECF No. 16-21 at 1. The Notice provided that the rescission guideline range was 36 – 56 months to be served based on the severity of the infraction, but that a decision below guidelines was warranted because Petitioner's "maximum remaining term of imprisonment limits the amount of additional time" Petitioner could serve.  Id.  Further, the Notice advised Petitioner that the decision was not appealable.  Id.

### D.    Instant Petition for Habeas Corpus Under § 2241

Petitioner filed the instant amended petition for habeas corpus on March 26, 2018, along with two additional pages and various exhibits, challenging his parole

7

determination.   ECF Nos. 1, 1-1 through 1-9.   Petitioner claims that the Parole Commission and the Parole Examiner unlawfully placed a detainer on him, which prevented his release from detention.  ECF No. 1-1 at 1.  Petitioner further claims that the acts of the Parole Commission have resulted in him serving "the same prison time twice." Id.  Petitioner partially bases his claim for relief on the imposition of an "illegal new sentence of 1810 days" which commenced on August 9, 2002.  Id. at 2.   Petitioner requests the Court release him immediately.  ECF No. 1 at 8.

Respondent filed a motion to dismiss, or in the alternative, for summary judgment, along with a memorandum in support thereof, and various attachments on August 7, 2019.  ECF Nos. 15, 16, 16-1 through 16-22.  Therein, Respondent argues that Petitioner is not entitled to relief because the Parole Commission properly calculated Petitioner's parole date, in that: (1) Petitioner's term of parole did not expire on July 24, 2007; (2) the Parole Commission properly awarded credit to and imposed a previously-suspended sentence upon Petitioner; and (3) the Parole Commission properly revoked Petitioner's parole from two District of Columbia Superior Court convictions.

A Roseboro notice was issued by the Court on August 8, 2019.  ECF No. 17.  A review of the docket shows that Petitioner has not filed any response following the issuance of the Roseboro notice.

### III.   LEGAL STANDARD

### A.   Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged

with screening Petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases in the U.S. District Courts; <u>see also</u> Rule 1(b) Rules Governing Section 2254 Cases in the U.S. District Courts (a district court may apply these rules to a habeas corpus petition not filed pursuant to § 2254).

### B.    Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  A complaint is frivolous if it is without arguable merit either in law or in fact.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in <u>Neitzke</u> recognized that:

> Section 1915(d)[7] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are

---

[7]  The version of 28 U.S.C. § 1915(d) which was effective when <u>Neitzke</u> was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

clearly baseless.

490 U.S. at 327.

### C.    Post-Conviction Remedies and Relief

Prisoners seeking to challenge the validity of their convictions or their sentences are required to proceed under § 2255 in the district court of conviction.  By contrast, a petition for writ of habeas corpus, pursuant to § 2241, is intended to address the execution of a sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated.  "In a § 2241 petition a prisoner may seek relief from such things as the administration of his parole, computation of his sentence by parole officials, disciplinary actions taken against him, the type of detention, and prison conditions in the facility where he is incarcerated." Adams v. United States, 372 F.3d 132, 135 (2d Cir. 2004).

### D.    Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519,

520 - 1 (1972) (per curiam); <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." <u>Id.</u> at 555, 570.  In <u>Twombly</u>, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." <u>Id.</u> at 570.  Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

 "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation.  <u>Id.</u> at 678.  "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u> at 679.  Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  <u>Id.</u> at 678.

 "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  <u>Republican Party of North Carolina v. Martin</u>, 980 F.2d 943,

952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and</u> <u>Procedure</u> § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d1130, 1134 (4th Cir. 1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

      **E.**    **Motions for Summary Judgment**

      Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  <u>Anderson v.</u> <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

      In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  <u>Matsushita Elec. Indus. Co., Ltd.</u> <u>v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).

      "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict."  <u>Anderson</u>, <u>supra</u>, at 256. Thus, the nonmoving party must

present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Id.  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id.   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Matsushita, supra, at 587.  "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968).  See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.    ANALYSIS

Petitioner essentially argues that the Parole Commission abused its discretion when it (1) denied him parole, and (2) imposed the same sentence twice.   This argument appears to fundamentally misunderstand or misrepresent the actions of the Parole Commission.  The Commission has authority to grant or deny release on parole pursuant to 18 U.S.C. § 4206(a) which provides that:

> If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:
>
> (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and
>
> (2) that release would not jeopardize the public welfare; subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.

Moreover, the guidelines for D.C. Code offenders, codified at 28 C.F.R. § 2.80 provides, in part, that:

> (b) Guidelines. In determining whether an eligible prisoner should    be paroled,    the Commission shall    apply the guidelines set forth in this section. The guidelines assign numerical values to pre- and post-incarceration factors. Decisions    outside    the guidelines may    be made,    where warranted, pursuant to paragraph (n) of this section.
>
> (c) Salient factor score and criminal record. The prisoner's Salient Factor Score shall be determined by reference to the Salient Factor Scoring Manual in § 2.20. The Salient Factor Score is used to assist the Commission in assessing the probability that an offender will live and remain at liberty without violating the law. The prisoner's record of criminal conduct (including the nature and circumstances of the current offense) shall be used to assist the Commission in

> determining the probable seriousness of the recidivism that is
> predicted by the Salient Factor Score.

Although the Parole Commission's decision on Petitioner's was outside the guidelines, the result was a <u>below</u> guidelines sentence.  The Notice of Action dated July 6, 2018, found that '[t]he guidelines indicate that parole should not be granted at this time."  ECF No. 16-1.  The reasoning of the Commission complies with the requirements of both 28 C.F.R. § 2.80 and 18 U.S.C. § 4206(a).  When the Commission makes such a decision within its discretion which comports with the regulations, the decision is not reviewable by the courts.

"[T]he parole act specifically commits the decision to grant or deny parole to the unreviewable discretion of the Parole Commission." <u>Garcia v. Neagle</u>, 660 F.2d 983, 988 (4th Cir. 1981); <u>see also</u> <u>United States Bd. of Parole v. Merhige</u>, 487 F.2d 25, 29 (4th Cir. 1973) ("[I]t is not the function of the courts to review the discretion of the Board in the denial of application for parole or to review the credibility of reports and information received by the Board in making its determination."); <u>Page v. Pearson</u>, 261 F. Supp.2d 528, 530 (E.D. Va. 2003) ("Parole decisions are [ ] not subject to arbitrary and capricious or abuse of discretion review under the provisions of the Administrative Procedure Act.") Further, the Fourth Circuit has held that:

> Where the controlling statute indicates that particular agency
> action is committed to agency discretion, a court may review
> the action if there is a claim that the agency has violated
> constitutional, statutory, regulatory or other restrictions, but
> may not review agency action where the challenge is only to
> the decision itself.

<u>Garcia</u>, 660 F.2d at 988 (citing <u>Ness Investment Corp. v. United States Department of Agriculture</u>, 512 F.2d at 706, 715 (9th Cir. 1975).  Following the holding of <u>Garcia</u>, the

Commission's parole determination is only reviewable if the commission 'exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations' when reaching its determination."

In the instant case, Petitioner argues that the Commission abused its authority by denying him parole on the basis that the Commission "illegally and deceitfully exercised indifference in care of time that Petitioner had spent in prison."   ECF No. 1-1 at 1. Petitioner further asserts that he "is doing the same prison time twice."  Id.

However, this argument ignores the fact that Petitioner, while on parole for his 1992 convictions, was convicted of additional offenses which added 128 months to his original sentence.   Moreover, because Petitioner had an additional 1,810 days left to serve on his initial sentence from which he was paroled, the Parole Commission permissibly denied Petitioner parole, imposed the suspended 1,810 days and imposed additional time for violations of parole.   All of those actions were within the sound discretion of the Commission.   Because the Commission followed the requirements of Garcia, by rendering a parole decision in compliance with the governing statutes and regulations, acting within its legal authority, and its actions were constitutional, the Commission did not abuse its discretion in rendering that decision.   Accordingly, this Court is without the authority to engage in judicial review of the Commission's substantive decision.   Further, because Petitioner fundamentally understands how his parole calculated, it is apparent that there are no genuine issues as to any material facts presented, and Respondent is entitled to judgment as a matter of law.

## V.    RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED** and that the § 2241 proceeding be **DISMISSED WITH PREJUDICE**.  It is further **RECOMMENDED** that Respondent's motion to dismiss, or in the alternative, for summary judgment [ECF No. 15] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.**  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the pro se Petitioner by certified mail, return receipt requested, to his last known address as

reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED:** October 29, 2019

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE